IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HARRY R. ELLWANGER,

                        Plaintiff,                OPINION AND ORDER

     v.

                                       09-cv-80-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security, denying plaintiff Harry R. Ellwanger's application for Supplemental Security Income under Title XVI of the Social Security Act, codified at 42 U.S.C. § 1382(c)(3)(A). Plaintiff is an obese 45-year-old former bartender who has problems with weakness and swelling in his lower left leg resulting from an injury he sustained when he was 14. In addition, he has weakness in his hands following carpal tunnel surgery. While plaintiff was working behind the bar in June 2005, his left ankle gave out, causing it to break. In August 2005, plaintiff applied for supplemental security income, alleging that he was unable to work because he could not walk or stand for very long. After the state agency denied his application, plaintiff requested a hearing before an administrative law judge, who determined

1

that plaintiff had significant limitations.  Specifically, he found that plaintiff could perform only sedentary jobs that did not require him to lift more than 10 pounds, stand for more than 10 minutes at a time or perform more than occasional fine or gross manipulation with his dominant left hand.  A vocational expert testifying at the hearing was ultimately able to identify only one occupation that satisfied these restrictions, that of customer service representative.  The expert told the administrative law judge at the hearing that a person with the restrictions outlined by the administrative law judge could meet the requirements of this job and that her testimony was consistent with information provided in the Dictionary of Occupational Titles, published by the Department of Labor.  In a decision issued June 5, 2008, the administrative law judge relied on this testimony as a basis for finding that plaintiff was not disabled.

I agree with plaintiff that this case must be remanded.  According to the Dictionary of Occupational Titles, the occupation of customer service representative is a skilled job. However, the administrative law judge found that plaintiff could perform only unskilled work.  In that respect, a conflict exists between the vocational expert's testimony and the Dictionary that was never explained at the hearing and that calls into question the reliability of the expert's testimony.  In addition, the administrative law judge conducted a faulty evaluation of the medical evidence in evaluating plaintiff's subjective complaints.   In particular, his decision suggests that he disregarded the effect of plaintiff's 1977 injury and

2

other impairments on his present condition and focused solely on the evidence relating to plaintiff's broken ankle. Accordingly, because it is unclear whether plaintiff actually is capable of performing the jobs identified by the vocational expert and because the administrative law judge failed to make a well-reasoned credibility determination, I am remanding the case to the commissioner for further proceedings.

The following facts are drawn from the administrative record (AR):

## FACTS

### A. Background

Plaintiff was born on September 19, 1963. AR 288. He completed high school and has past relevant work as a bartender. AR 141, 147. In 1977, plaintiff suffered an injury to his left leg when he was hit by a motor vehicle. Since then, he has suffered some chronic loss of sensation and weakness in his left leg. AR 198, 262. He is obese, weighing about 330 pounds and standing six feet, two inches.

### B. Medical Evidence

1. Dr. R. E. Huizenga

In June 2005, plaintiff's left ankle "gave out" while he was at work tending bar. AR 200. An x-ray showed a nondisplaced ankle fracture. AR 202. On July 1, 2005, Dr. R.E.

Huizenga, an orthopedist, saw plaintiff for his fractured ankle.  He noted that plaintiff's entire left leg was discolored, with moderate swelling and tenderness at the ankle.  Huizenga prescribed hydrocodone for plaintiff's pain.  AR 216.  Plaintiff saw Huizenga throughout July.  The hydrocodone seemed to be helping, but plaintiff was unable to bear weight on his left ankle.  He was unable to work because of swelling and tenderness in the ankle and a marked limitation of motion. AR 213.  On August 11, 2005, plaintiff saw Huizenga and reported pain and an inability to function at his previous level of activity.  AR 212.  Huizenga prescribed physical therapy three times a week to increase plaintiff's range of motion and to strengthen his ankle.  AR 213.

At plaintiff's first physical therapy appointment on August 16, 2005, he was using a cane and had decreased left ankle strength and range of motion.  The therapist thought plaintiff's rehabilitation potential was good.  AR 194.  After six visits, however, the therapist noted that plaintiff's progress was slow and that he was still suffering from more pain with prolonged standing and walking.  AR 191.

On September 8, 2005, plaintiff saw Huizenga.   On examination, Huizenga noted that plaintiff had moderate swelling and tenderness of the left ankle and diffuse weakness in the left lower limb, especially at the knee, ankle and toes.  Huizenga noted that before he broke his ankle, plaintiff walked with a limp because of the injury to his leg when he was 14.  Huizenga continued plaintiff's physical therapy.  AR 210.

4

When plaintiff returned to Dr. Huizenga on October 6, 2005, he reported left ankle pain and instability.  He told Huizenga that he had recently used some of the hydrocodone that had been prescribed three months earlier.  Huizenga noted that plaintiff had tenderness and swelling of his ankle.  After looking at the x-rays again, Huizenga noted no evidence of osteoarthritis at the ankle.  AR 210.  Huizenga told plaintiff that he might have persistent ankle problems because of the weakness secondary to his childhood injury and his excessive weight.  Because plaintiff was making very little progress in physical therapy, Huizenga discontinued it.  AR 211.

On March 16, 2006, plaintiff returned to see Dr. Huizenga.  He reported ongoing severe ankle pain and weakness, with frequent giving way of the ankle.  Plaintiff walked with a cane.  Plaintiff said that his left leg had been lacerated during the 1977 accident, causing vascular and nerve damage and permanent weakness in the lower leg.  An x-ray showed that plaintiff's left ankle fracture had healed completely with no evidence of osteoarthritis.  AR 272.  Huizenga noted that plaintiff was grossly overweight.  Plaintiff walked with a limp favoring the left leg.  Huizenga detected weakness in plaintiff's left ankle and knee and observed extensive scarring in plaintiff's left leg.  He prescribed an ankle foot orthotic.  AR 262.  After a visit with plaintiff on December 20, 2006, Huizenga wrote that, because of the weakness in plaintiff's left lower limb, he would never be able to do any standing work.  AR 263.

5

In June 2007, plaintiff reported to Dr. Huizenga that the pain in his left ankle had worsened and that he also had knee and low back pain.  Plaintiff was using a cane and reported that he could be on his feet for 15 minutes at a time at most and could walk 200-300 feet at most and then only if he went slowly.  He said his left ankle swelled frequently.  On examination, Huizenga noted that plaintiff's left ankle was mildly swollen and the left leg had very prominent venous stasis dermatitis.  (Venous stasis dermatitis is an inflammatory skin disease that occurs on the lower extremities in patients with chronic venous insufficiency.  It rarely occurs before the age of 50 except in patients who have had surgery, trauma or thrombosis.  Http://emedicine.medscape.com/article/1084813-overview.)  A repeat x-ray of the left ankle was unremarkable.  Huizenga recommended that plaintiff get knee-high compression hose for his left leg.  He wrote:  "I still consider him disabled and unable to do any kind of work that involves standing."  AR 264.  That same day, Huizenga completed a form for plaintiff's insurance company, indicating that plaintiff had weakness in his left leg secondary to nerve injury, morbid obesity and venous insufficiency.  He wrote that plaintiff could never return to work and was unable to walk or stand.  AR 176.

2.  Dr. Tejesh Patel

On February 1, 2006, plaintiff saw Dr. Tejesh Patel for hypertension.   Patel encouraged plaintiff to lose weight, exercise, quit chewing tobacco and reduce his alcohol

6

intake to no more than one to two drinks at a time.  He also prescribed medication for plaintiff's hypertension.  AR 244A.  A week later, plaintiff returned to Patel's office suffering a hypertensive emergency.  He was treated in the emergency room.  AR 245.

On February 21, 2006, plaintiff returned to see Dr. Patel, who noted that the Toprol XL was proving effective.  AR 245A-46.  Plaintiff continued to see Patel for hypertension through at least March 2008.  AR 247A-55.

In March 2007, Patel referred plaintiff to Dr. T. Wang, a gastroenterologist, after plaintiff had abnormal liver function tests.  Wang observed that plaintiff had mild edema in his left leg.  Laboratory and ultrasound testing showed that plaintiff had fatty inflammation of the liver.  Wang advised plaintiff to stop drinking alcohol and lose weight.   AR 243A.

3. <u>Dr. K. Goetzen</u>

In October 2007, plaintiff visited neurologist Dr. K. Goetzen for tingling in both hands and legs.  Plaintiff had normal strength in his left lower extremity, but occasionally had poor effort because of his left leg pain. AR 256-57.  X-rays showed degenerative changes of the thoracic, lumbar and cervical spine.  AR 268-70.

4.  Dr. A. Matloob

In November 2007, plaintiff visited orthopedist Dr. A. Matloob, complaining of numbness and tingling in the fingers of his left hand.  Nerve conduction studies revealed bilateral carpal tunnel syndrome.  AR 265.  On December 6, 2007, plaintiff had left carpal tunnel surgery.  AR 275-76.  In January 2008, plaintiff was doing very well and was happy with the results of his surgery.  AR 266.  He had right carpal tunnel surgery on January 15, 2008.  AR 266, 273-74.  Nine days after surgery, plaintiff was happy with the results.  AR 267.

C.  Consulting Physicians

On October 26, 2005, state agency physician Mina Khorshidi completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of left ankle fracture, old left leg injury, hypertension and back pain.  Khorshidi found that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, stand or walk two hours in an eight-hour workday and sit six hours in an eight-hour work day with no other limitations.  AR 217-24.

On February 24, 2006, state agency physician Dar Muceno completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of remote left leg trauma and status post left ankle fracture. Muceno found that plaintiff could lift 20 pounds

8

occasionally and 10 pounds frequently, stand or walk two hours in an eight-hour workday and sit six hours in an eight-hour work day with no other limitations.  He also concluded that plaintiff could climb ramps and stairs, stoop, kneel, crouch and crawl occasionally, but could never climb ladders, ropes or scaffolds.  Muceno also noted that plaintiff should avoid concentrated exposure to hazards such as machinery or heights.  AR 225-32.

### D.  Hearing Testimony

Plaintiff testified at the hearing as follows:

He last worked on June 25, 2005, tending bar 10 hours a day in a bar owned by his wife.  He quit working after his ankle broke while he was just standing at the bar.  AR 288-89.  One doctor told him his ankle had broken because all the muscles in his left side were deteriorating as a result of the left leg injury he suffered in 1977.  Plaintiff wears a plastic ankle brace and uses a cane.  AR 291.

Plaintiff elevates his leg because his ankle swells.  Also he has a skin condition on his left leg.  AR 292.  He falls without notice and can stand for only five minutes.  AR 293-94.  His lower back and legs are uncomfortable when he is sitting.  AR 296.  He drives, but his wife helps him shower, dress and put on his ankle brace.  AR 299.  He spends most of his day watching television with his leg elevated.  AR 302.  He grocery shops on occasion.  He does not cook, clean, do dishes, laundry, take care of the lawn or read.  AR 303.

9

Plaintiff testified that he had carpal tunnel surgery on both hands.  AR 299.  He said that at first, the numbness in his fingers went away.  However, it returned and was worse than it had been before the surgery.  Plaintiff said he no longer has any strength in his hands and cannot even open a plastic soda bottle.  AR 301.

The administrative law judge called Catherine Anderson to testify as a neutral vocational expert.  AR 304.  Anderson testified that plaintiff had performed his past work as a bartender at the semi-skilled, medium level.  AR 305  She further testified that the skills from plaintiff's bartender job were not transferrable to any other jobs at the sedentary exertional level.  AR 206.

The administrative law judge asked Anderson whether occupations existed in Wisconsin that could be performed by an individual of plaintiff's age, educational background, work experience and the residual functional capacity to perform sedentary work with occasional stooping, bending, or crouching; occasional gross or fine manipulation with the dominant left hand; and no climbing, crawling or kneeling.  Anderson responded that such a person would be able to perform jobs existing in Wisconsin as a cashier (11,800 jobs), inspector or sorter (1,500 jobs), shipping or receiving clerk (2,900 jobs), assembler (1,000 jobs) and customer service representative (7,100 jobs).  AR 306.  The administrative law judge asked Anderson whether her testimony differed from the information in the Dictionary of Occupational Titles.  She responded. "No, it has not." AR 307.  Although Anderson had

10

testified that these positions did not require more than occasional handling with the left hand, after an off-the-record discussion, she modified her testimony and stated that all the positions except customer service representative would require more than occasional handling with the left hand.   Therefore, she eliminated these other positions from the available jobs.  AR. 310-12.

On cross-examination, plaintiff's attorney asked Anderson whether competitive work would be eliminated if the hypothetical individual had to lie down for an hour a day.  She answered that it would.  AR 307.  She also testified that if the individual had to elevate his leg while sitting, he could not perform the customer service representative position.  AR 314.  Plaintiff's lawyer did not pose any questions about the level of skill the job would require. (Under the commissioner's regulations, jobs are classified as unskilled, semi-skilled or skilled. 20 C.F.R. § 416.968.)

### E.   The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. §§ 404.1520, 416.920. Under this test, the administrative law judge considers sequentially 1) whether the claimant is currently employed, 2) whether the claimant has a severe impairment, 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404,

11

Subpt. P, App. 1, 4) whether the claimant can perform his past work and 5) whether the claimant is capable of performing work in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).  If a claimant satisfies steps one through three, he is found automatically to be disabled.  If the claimant meets steps one and two, but not three, then he must satisfy step four.  Id.  The claimant bears the burden of proof in steps one through four.  If the claimant satisfies step four, the burden shifts to the commissioner to prove that the claimant is capable of performing work in the national economy.  Id.

At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since June 25, 2005, his original alleged onset date.  At step two, he found that a plaintiff had severe impairments of obesity, residuals of a nondisplaced supramalleolar fracture and carpal tunnel syndrome.  AR 106.  At step three, the administrative law judge found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 107.

The administrative law judge found that plaintiff retained the residual functional capacity to perform a range of sedentary work with occasional stooping, bending and crouching; occasional fine or gross manipulation with his dominant left hand; no climbing, crawling or kneeling; and standing for only 10 minutes at a time.  In reaching this conclusion, the administrative law judge stated that he had "taken into consideration" Dr.

12

Huizenga's opinion that plaintiff could not do work involving standing, even though he found that the opinion "lack[ed] clinical corroboration." AR 109. The administrative law judge explained that Huizenga had based his opinion on plaintiff's reports of a long-standing nerve and vascular injury "which is largely undocumented in the clinical evidence." AR 108. With respect to the ankle injury, the administrative law judge noted that plaintiff's ankle had healed without any consequent arthritis and that the state agency had questioned whether plaintiff's impairment even met the 12-month durational requirement for disability. AR 108. As for plaintiff's testimony regarding his limitations, the administrative law judge found it "highly questionable," noting that his injury was "in essence an entirely healed fracture" and plaintiff had not taken much pain medication. Id.

At step four, the administrative law judge found that plaintiff was not able to perform his past work, which he performed at a medium exertional level. AR 109. At step five, the administrative law judge found, based on the vocational expert's testimony, that there were 7,100 customer service jobs available in Wisconsin that plaintiff could perform. The administrative law judge found the expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. He then concluded that plaintiff was not disabled. AR 110.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

14

B. Step Five

An administrative law judge may rely on testimony from a vocational expert to satisfy the commissioner's burden to produce evidence of a significant number of jobs that the claimant can perform in spite of his limitations.  SSR 00-4p; Warmoth v. Bowen, 798 F.2d 1109, 1112 (7th Cir. 1986).  When, as in this case, an administrative law judge takes testimony from a vocational expert about the requirements of a particular job, SSR 00-4p requires him to ask whether that testimony conflicts with the Dictionary before relying on that evidence to support a determination of nondisability.  If the expert identifies a conflict or the evidence provided by the expert seems on its face to conflict with information in the Dictionary, the administrative law judge must obtain a reasonable explanation from the expert for the conflict.  20 C.F.R. § 416.966(e); SSR 00-4p; Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008).  In the absence of an apparent conflict, a vocational expert's testimony, even if little more than a "bottom line," may satisfy the commissioner's burden at step five if no one questions the basis of the vocational expert's conclusions at the hearing. Overman, 546 F.3d at 465; Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002).

Plaintiff argues that the vocational expert's testimony in this case conflicts with the Dictionary and is not reliable.  Specifically, plaintiff argues that all of the customer service representative jobs in the Dictionary exceed his abilities because they are skilled positions. As plaintiff points out, there are seven customer service representative jobs listed in the

15

Dictionary. (D.O.T. ## 205.362-026; 032.362-010; 239.362-014; 959.361-010; 241,267-032; 239.227-010 and 239.137-014).  Only four of these are sedentary jobs and all seven have a Specific Vocational Preparation (SVP) level of five or more, indicating that it is skilled work.  (Under the commissioner's regulations, jobs are classified as unskilled, semi-skilled or skilled.  20 C.F.R. § 416.968.  Skilled work corresponds to a SVP of five to nine.  SSR 00-4P.)  However, the vocational expert testified that plaintiff had no skills from his past relevant work that could be transferred to sedentary work.  This meant that the relevant occupational base had to be restricted to *unskilled* jobs.  20 C.F.R. § 416.965(a) ("If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled.").

The commissioner responds that plaintiff's transferability-of-skills argument is a "red-herring."  Like the administrative law judge, the commissioner asserts that the issue was irrelevant because of plaintiff's age, citing 20 C.F.R. § 416.968(d)(4).  This regulation, which prescribes special rules regarding transferability of skills that apply to individuals aged 55 or older, has no relevance to this case.  Plaintiff was 45 at the time the administrative law judge issued his decision.  Why the administrative law judge cited the regulation in his decision and why the commissioner relies on it now is a mystery.

Absent evidence that plaintiff has skills that can be transferred to either semi-skilled or skilled work, I agree with plaintiff that the vocational expert was required to limit her

16

testimony to jobs at the unskilled level.  Indeed, the administrative law judge's decision indicates that he recognized this as the appropriate job base.  AR 110  ("To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert . . .".)   Apart from its misplaced "red-herring" argument, the commissioner has not made any attempt to refute plaintiff's contention that no customer service representative position identified in the <u>Dictionary</u> can be performed at the unskilled level or to otherwise challenge plaintiff's attack on the reliability of the vocational expert's testimony.  Although an argument could be made that the administrative law judge was entitled to rely on the vocational expert's testimony because the conflict with the <u>Dictionary</u> was not obvious and plaintiff did not challenge the vocational expert's testimony regarding the skill level required of a customer service representative, <u>Overman</u>, 546 F.3d at 465, the commissioner has not taken this position.  Accordingly, because plaintiff has called into question the reliability of the expert's testimony concerning plaintiff's ability to meet the skill requirements of customer service representative jobs, this case must be remanded for further proceedings.

## C.  <u>Residual Functional Capacity</u>

Plaintiff contends that the administrative law judge erred in determining his residual functional capacity.  First, he argues that the administrative law judge erred by stating that

17

he "considered" Dr. Huizenga's opinion instead of explaining how much weight he gave it. 20 C.F.R. § 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  Although I agree that the administrative law judge may have committed a technical violation of the regulations concerning opinions from treating physicians, plaintiff cannot show that he was harmed by it.  In spite of making several comments that indicated that Huizenga's opinion lacked clinical support, the administrative law judge ultimately adopted it.  Huizenga indicated that plaintiff was not capable of work involving standing or walking, and the administrative law judge eliminated such jobs by restricting plaintiff to sedentary work with no standing for more than 10 minutes at a time.

More persuasive is plaintiff's contention that the administrative law judge failed to properly evaluate his testimony that he must elevate his leg when seated because of swelling in his leg.  The administrative law judge noted this testimony, but found that it was not entirely credible, writing:

> The claimant's statements regarding residual limitations from what is in essence an entirely healed fracture, including his statement that he needs his wife's help to dress, appear highly questionable.  Notably Dr. Huizenga's records indicate at one point that the claimant had only recently used some of the pain medication he had prescribed three months earlier and that he was not on any significant pain medication at all by February 2006.

18

AR 108.  The administrative law judge's belief that plaintiff's problems stemmed from "what is in essence an entirely healed fracture" mirrors comments he made elsewhere in his decision, which evince his skepticism of plaintiff's allegations of having sustained nerve and vascular injury to the left leg in 1977.  AR 107 (noting nothing in record to confirm plaintiff's history of problems in the left leg), AR 108 (noting that Huizenga had based his opinions on plaintiff's self-reports of long-standing nerve and vascular injury, which were "largely undocumented in the clinical evidence").  Although it may be true that the record lacked records from 1977 documenting the injury, it did contain evidence corroborating plaintiff's account, including the extensive scarring on his leg, documented left leg weakness and swelling and the venous stasis dermatitis, not to mention the fact that plaintiff's ankle had "given out" and broken with ordinary activity.  More important, no doctor, including his orthopedist, Dr. Huizenga, questioned that the nerves and vessels in plaintiff's left leg were damaged.  In addition, the administrative law judge seems to have given short shrift to plaintiff's obesity and hypertension, both of which likely contribute to the swelling in his leg.  Barrett v. Barnhart, 355 F.3d 1065, 1068 (7th Cir. 2004) (administrative law judge must consider applicant's medical situation as whole).  By limiting the scope of his inquiry to the limitations that could credibly result from plaintiff's ankle injury and ignoring the other impairments documented in the record, the administrative law judge overstepped his bounds and "played doctor."  Murphy v. Astrue, 496 F.3d 630, 634 (7th Cir. 2007) (administrative

19

law judge "cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so").  Finally, the fact that plaintiff did not take pain medication for his ankle does little to undermine his complaints of swelling and weakness.

It is true that there is no medical record showing that any physician or therapist advised plaintiff to elevate his leg during the day.  However, in formulating a claimant's residual functional capacity, an administrative law judge must consider all relevant evidence, both medical and non-medical, including a claimant's own statement of what he or she is able or unable to do.  20 C.F.R. § 416.945(a)(3).  Of course, an administrative law judge need not accept some or all of a plaintiff's subjective complaints, but he must provide sound reasons, supported by the record, for rejecting them.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).  The administrative law judge failed to do that in this case. Accordingly, on remand, the administrative law judge must conduct a new credibility assessment that builds a rational bridge from the evidence to his conclusion and that takes into account the entire constellation of plaintiff's impairments.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Harry R. Ellwanger's application for disability insurance benefits is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 13th day of August, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge